UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN HADNOTT, JESSIE HADNOTT, KEVIN HUNT, and BRANDELL BETTS, ) ) ) | |
| Plaintiffs, ) ) | Case No. 07 C 6754 |
| v. ) ) | Judge David H. Coar |
| UNKNOWN UNNAMED OFFICERS OF THE CHICAGO POLICE DEPARTMENT, and CITY OF CHICAGO, ) ) ) ) | Magistrate Judge Schenkier |
| Defendants. ) | |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDERS,
PURSUANT TO F.R.Civ.P. 72(a)**

Plaintiffs, JONATHAN HADNOTT, JESSIE HADNOTT, KEVIN HUNT, and BRANDELL BETTS, by and through their attorney, Irene K. Dymkar, hereby object to the magistrate judge's orders of May 15, 2008, May 21, 2008, and May 22, 2008, in this case. In support of their objections, plaintiffs state:

1) Plaintiffs moved for an order dismissing the answer, or, in the alternative, compelling discovery on a shortened schedule and compelling defendants to produce witnesses for deposition, or precluding defendants from the use of witnesses or documents at trial, which was presented on May 22, 2008. *See Document 30.* Attached to the motion was plaintiffs' demand for specific document production that could be used to determine the identity of the unknown officers and plaintiffs' notice of deposition to take the deposition of a police commander (Keith Calloway) for the police district where the arrest of defendants and search of their residence took place. *See Document 30-5 and 30-6.*

2) Defense counsel suggested orally to the magistrate that a photo array be conducted with plaintiffs before any document production or depositions take place, a procedure to which plaintiffs had objected. In response to defendants' oral suggestion and in granting defendants' subsequent motion for a protection order barring any depositions, the magistrate judge ruled that a photo array should take place first, followed by document production and possible depositions.

3) Defense counsel subsequently informed me that the photo array would consist of *over 1000* photographs and that the process of presenting the array would take at least *four hours.* I informed the magistrate of this on May 22, 2008, and repeated my objections to this process, because it will be humanly impossible for plaintiffs to identify anyone from the photographs, given just the sheer number of photographs.

4) I argued also to the magistrate that the presentation of black and white headshot photographs of police officers of unknown vintage and unknown quality is not likely to be a reliable method of identifying the officers and that this method should be used as a last resort. I informed the magistrate that one of the plaintiffs is in her 70's and this incident occurred a year and a half ago, all factors that will further impede an identification by viewing a photo array consisting of over 1000 photographs.

5) The magistrate's orders of May 15, May 21, and May 22, 2008, prohibit plaintiffs' taking of depositions of knowledgeable witnesses and postpone production of police "Attendance and Assignment sheets" until after the photo array. The orders do require defense counsel to produce the LEADS and warrant search of plaintiff Jonathan Hadnott by the end of the day on May 23, 2008, which was not done, and database searches of other plaintiffs by June 5, 2008.

6) I spoke to defense counsel in person on May 28, 2008, and confirmed what she had told me weeks ago, which is that she already has the "Attendance and Assignment sheets" for the two relevant districts in her possession. She also confirmed that these sheets do indicate that a number of unmarked cars had three officers assigned to them, *which is exactly what we are looking for.* I asked her to disclose these sheets, as I have several times in the past, but she has not done so. I also asked her to consent to a photo array of the officers who were in three-men unmarked cars on December 4, 2006, but she refused.

7) Defendants have made virtually no effort to identify the police officers who engaged in unconstitutional conduct. The whole idea of unmarked cars and plain clothes officers is to make it more difficult to identify them as police officers, which should place even greater accountability on the Chicago Police Department for their actions. The burden should be on the defendants to identify these officers.

8) To date, defendants have made no Rule 26(a)(1) disclosures and they have not produced even one document. Defense counsel claims that a search is being done by the police for the unknown officers, but has not produced even a scintilla of proof of this, even the LEADS and warrant search report she was required to produce by May 23, 2008.

9) Plaintiffs should not be restricted to one approach to identify the unknown officers, and they should be required to view a photo array of over 1000 photographs, to take place over a period of four hours, only as a last resort.

WHEREFORE, plaintiffs request that the Court modify the magistrate's orders to require the following:

a) Defendants are to respond to plaintiffs' request for document production (*Document 30-5*) forthwith,

b) The depositions of Commander Keith Calloway and the person most knowledgeable as to who the unknown officers might be are to go forward, and

c) If the "Attendance and Assignment sheets" indicate there were unmarked cars with three officers, then a photo array of those officers be arranged.


Dated:  May 30, 2008                                             /s      Irene K. Dymkar
                                                                      Irene K. Dymkar


Irene K. Dymkar
Plaintiffs' Attorney
300 W. Adams Street, Suite 330
Chicago, IL 60606-5107
(312) 345-0123