# EXHIBIT B

*Hadnott v. Kelly, et al.*
07 C 6754



**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Individual Defense Litigation
Suite 1400
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 742-6433
(312) 744-6566 (FAX)
(312) 744-9104 (TTY)
http://www.cityofchicago.org



**Via Hand-delivery**

September 10, 2009

Irene K. Dymkar, Esq.
300 West Adams Street, Ste. 330
Chicago, Illinois 60606

Re: *Hadnott v. City of Chicago, et al.,* 07 C 6754

Dear Counsel:

Pursuant to Judge Schenkier's order of October 23, 2008 and Judge Coar's Memorandum Opinion and Order of February 24, 2009, enclosed please find Defendants' City of Chicago and Michael Kelly's attorneys' fees and bill of costs with respect to litigating the issues in this case that arose from your refusal on August 19, 2008 to participate in a telephone call to Magistrate Judge Brown following the deposition of Michael Kelly.

Regarding counsel for the City of Chicago, while there are no decisions on record in the Northern District providing examples of fees for municipal attorneys, after consulting the Laffey Matrix*, and recent Seventh Circuit opinions, we have determined that a reasonable rate for ACC Ashley Kosztya is $300.00 per hour. Ms. Kosztya has been a trial attorney for approximately eight years. During this time she has tried numerous cases to verdict in both the civil and criminal state courts in Illinois, as well as in the U.S. District Court for the Northern District of Illinois. She has concentrated her practice of law in civil rights defense and general torts defense for over six years. In addition, she has successfully represented clients on numerous appeals.

We have further determined that a reasonable rate for ACC Gail Reich is $270.00 per hour, based upon the same considerations. Ms. Reich has been practicing since 2003, and is also well-versed in the area of Section 1983 litigation. She has litigated hundreds of cases in Illinois state court and represented numerous clients in cases involving excessive force, false arrest, etc., in the U.S. District Court for the Northern District of Illinois, having taken one case to trial.

Assistant Corporation Counsel Megan McGrath's rate has been calculated at $225.00 per hour, based on nearly three years of experience in police defense with the City of Chicago's Law Department. Ms. McGrath has litigated over one hundred cases, and taken three to trial.

Utilizing the Laffey Matrix and Seventh Circuit opinions as guides, Senior Assistant Corporation Counsel Alec McAusland's rate is calculated at







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Individual Defense Litigation
Suite 1400
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 742-6433
(312) 744-6566 (FAX)
(312) 744-9104 (TTY)

http://www.cityofchicago.org

$410.00 per hour, based on more than19 years of civil rights litigation experience as an attorney, having taken approximately 20 cases to verdict.

We have also referred to the Laffey Matrix in calculating a reasonable rate of $410.00 per hour for Deputy Assistant Corporation Counsel Naomi Avendano, who heads the Federal Civil Rights Litigation Division within the City's Law Department. Ms. Avendano has practiced law for over 19 years, the last 15 of which have been in the area of civil rights. During this time, she has taken five class action lawsuits and approximately 15 other cases to trial. She has also argued before the 7th Circuit.

Additionally, we have used a standard rate, also in accordance with the Laffey Matrix, when determining the rate of $125.00 per hour for Law Clerk Cherie Getchell. All individuals' time calculations are detailed in the attached spreadsheets. You will also find included three additional charts, which detail the cost of transcripts, printing and copying, and legal research. The total charges for fees for the work of these five attorneys and our law clerk is the sum of **$21,590.25**. In addition, the costs for litigating the aforementioned issues amount to **$3,801.74**, for a total of **$25,391.99**.

Please write one check in the amount of **$25,391.99** payable to the City of Chicago at your earliest convenience. In the event you dispute the amount we have cited above, we ask that you contact us within the next 14 business days to discuss any issues you may have so that we can attempt to reach a compromise.

Regards,

Ashley C. Kosztya
Assistant Corporation Counsel
Representing the City of Chicago
(312) 744-2826

ACC Gail Reich
Assistant Corporation Counsel
Representing Michael Kelly
(312) 744-1975

encl.

---

* The Laffey Matrix has been relied upon by the Northern District in calculating attorney's fees in several cases; one of the more recent examples is *Robinson v. City of Harvey, et al.*, No. 99 C 3696 (enclosed), where the Court decided on hourly rates for the five attorneys who represented the plaintiff. The *Robinson* court relied on the Laffey Matrix as well as representations of hourly rates that were reasonable in the relevant Chicago area market.





## ASHLEY KOSZTYA

| Date | Time | Work performed | Cost $300/hr |
|------|------|----------------|--------------|
| 8/19/2008 | 0.30 | telephone conference from Kankakee with supervisor re: motion to seal and for protective order | $ 90.00 |
| 8/20/2009 | 0.10 | order expedited partial transcript from Michael Kelly's Deposition | $ 30.00 |
| 8/20/2009 | 2.00 | legal research | $ 600.00 |
| 8/20/2008 | 0.50 | meeting with supervisor re: motion to seal and for protective order | $ 150.00 |
| 8/20/2008 | 2.00 | draft motion to seal and for protective order, compile exhibits, filing | $ 600.00 |
| 8/26/2008 | 0.25 | review Plaintiffs response | $ 75.00 |
| 8/27/2008 | 1.00 | travel and court appearance, motion hearing | $ 300.00 |
| 9/5/2008 | 0.30 | meet with law clerk re: research project | $ 90.00 |
| 9/9/2008 | 1.00 | review of law clerk's research memo | $ 300.00 |
| 9/15/2008 | 0.25 | review Plaintiffs motion for extension of time | $ 75.00 |
| 9/18/2008 | 1.00 | review of Plaintiffs response | $ 300.00 |
| 9/19/2008 | 0.50 | meeting with co-counsel re: Plaintiffs response | $ 150.00 |
| 9/25/2008 | 0.25 | meeting with co-counsel re: Plaintiffs reply | $ 75.00 |
| 9/25/2008 | 2.00 | draft Defendants' reply to plaintiff's response | $ 600.00 |
| 9/30/2008 | 0.50 | meeting with co-counsel re: Defendants' reply | $ 150.00 |
| 10/1/2008 | 2.30 | legal research | $ 690.00 |
| 10/20/08 | 0.50 | review of Plaintiffs motion for leave to file sur-reply and sur-reply | $ 150.00 |
| 10/23/08 | 1.50 | Appearance for P's sur-reply; travel | $ 450.00 |
| 11/3/2008 | 0.90 | Initial review of Plaintiffs' Objections to Schenkier's orders of 10/23/08 | $ 270.00 |
| 11/4/2008 | 0.50 | meeting with co-counsel re: Plaintiffs objections | $ 150.00 |
| 11/5/2008 | 1.00 | travel and appearance for P's objections | $ 300.00 |
| 11/6/2008 | 0.60 | legal research | $ 180.00 |
| 11/15/2008 | 3.00 | review of case law and draft Defendants' response to P's objections | $ 900.00 |
| 11/18/2008 | 1.00 | supervisor's review and comment on Defendants' response | $ 300.00 |
| 3/3/2009 | 0.10 | review of Plaintiffs' counsel's declaration | $ 30.00 |

24.25 TOTAL

$ 7,005.00

## GAIL REICH pg. 1

| Date | Time | Work performed | Cost $270/hr |
|------|------|----------------|--------------|
| 8/19/2008 | 0.30 | telephone conference from Kankakee with supervisor re: motion to seal and for protective order | $ 81.00 |
| 8/20/2008 | 0.50 | meeting with supervisor re: motion to seal and for protective order | $ 135.00 |
| 8/20/2008 | 0.10 | order expedited partial transcript of deposition of Michael Kelly | $ 27.00 |
| 8/20/2008 | 2.50 | draft motion to seal and for protective order, compile exhibits, filing | $ 675.00 |
| 8/26/2008 | 0.25 | review Plaintiffs' response | $ 67.50 |
| 8/27/2008 | 1.00 | travel and court appearance, motion hearing | $ 270.00 |
| 8/29/2008 | 0.30 | draft memo to law clerk for issues to research | $ 81.00 |
| 9/2/2008 | 0.50 | meet with law clerk re: research project | $ 135.00 |
| 9/3/2008 | 0.30 | legal research (GR) | $ 81.00 |
| 9/5/2008 | 0.30 | meet with law clerk re: research project | $ 81.00 |
| 9/9/2008 | 1.00 | review of law clerk's research memo | $ 270.00 |
| 9/15/2008 | 0.25 | review Plaintiffs' motion for extension of time | $ 67.50 |
| 9/18/2008 | 1.00 | review of Plaintiffs' response | $ 270.00 |
| 9/18/2008 | 0.20 | legal research (GR) | $ 54.00 |
| 9/19/2008 | 0.50 | meeting with supervisor and co-counsel re: Plaintiffs' response | $ 135.00 |
| 9/23/2008 | 1.10 | legal research (GR) | $ 297.00 |
| 9/24/2008 | 3.00 | draft Defendants' reply to plaintiff's response | $ 810.00 |
| 9/25/2008 | 0.25 | meeting with co-counsel re: reply | $ 67.50 |
| 9/26/2008 | 3.00 | draft Defendants' reply to plaintiff's response | $ 810.00 |
| 9/27/2008 | 1.50 | review of Law clerk's modifications to draft reply | $ 405.00 |
| 9/29/2008 | 1.50 | revisions of law clerk's modifications to draft reply | $ 405.00 |
| 9/30/2008 | 0.50 | meeting with co-counsel re: Defendants' reply | $ 135.00 |
| 10/1/2008 | 0.10 | filing of reply | $ 27.00 |
| 10/21/2008 | 0.60 | review of Plaintiffs' motion for leave to file sur-reply and sur-reply | $ 162.00 |
| 10/31/2008 | 1.00 | initial review of Plaintiffs' Objections to Schenkier's orders of 10/23/08 | $ 270.00 |
| 11/4/2008 | 0.50 | meeting with co-counsel re: Plaintiffs' objections | $ 135.00 |
| 11/5/2008 | 0.30 | legal research (GR) | $ 81.00 |
| 11/5/2008 | 1.00 | travel and appearance for P's objections | $ 270.00 |
| 11/7/2008 | 6.00 | review P's objections and case law and draft Defendants' response to P's objections | $ 1,620.00 |
| 11/9/2008 | 2.50 | draft Defendants response to P's objections | $ 675.00 |
| 11/12/2008 | 0.40 | meeting with co-counsel Re: Defendants' Response to P's Objections | $ 108.00 |
| 11/13/2008 | 0.60 | legal research (GR) | $ 162.00 |
| 11/14/2008 | 4.50 | draft Defendants' response to P's objections | $ 1,215.00 |

## GAIL REICH pg.2

| Date | Hours | Description | Amount |
|---|---|---|---|
| 11/14/2008 | 0.40 | legal research (GR) | $ 108.00 |
| 11/16/2008 | 2.00 | revisions of Defendants' response to P's objections | $ 540.00 |
| 11/18/2008 | 1.00 | supervisor's review and comment on Defendants' response | $ 270.00 |
| 11/19/2008 | 1.00 | revisions to D's response | $ 270.00 |
| 11/19/2008 | 0.50 | scan exhibits, file response | $ 135.00 |
| 2/23/2009 | 2.50 | draft and file Defendants' motion for extension of time to complete discovery pending court's ruling | $ 675.00 |
| 3/3/2009 | 0.10 | review of Plaintiffs' counsel's declaration | $ 27.00 |

45.85 TOTAL

$ 12,109.50

## NAOMI AVENDANO

| Date | Time | Work performed | Cost $410/hr |
|------|------|----------------|--------------|
| 8/19/2008 | 0.30 | telephone conference with attorneys in Kankakee | $123.00 |
| 8/20/2008 | 0.30 | meeting with attorneys re: motion to seal | $123.00 |
| 11/19/2008 | 0.60 | review Defendants' Response to P's Objections | $246.00 |
| | 1.20 | TOTAL | $492.00 |

## ALEC MCAUSLAND

| Date | Time | Work performed | Cost $410/hr |
|------|------|----------------|--------------|
| 8/20/2008 | 0.30 | meeting with attorneys re: Defendants' Motion for Seal | $ 123.00 |
| 8/20/2008 | 0.30 | review of Defendants' Motion for Seal | $ 123.00 |
| 11/18/2008 | 0.90 | review of Defendants' Response to P's Objections | $ 369.00 |
| | 1.5 | TOTAL | $ 615.00 |

MEGAN MCGRATH

| Date | Time | Work performed | Cost $225/hr |
|------|------|----------------|--------------|
| 2/23/2009 | 0.25 | review/prepare Defendants' motion for extension of time to complete P's Depositions | $56.25 |
| | | TOTAL | $56.25 |

## CHERIE GETCHELL--LAW CLERK

| Date | Time | Work performed | Cost $125/hr |
|------|------|----------------|--------------|
| 9/5/2008 | 1.50 | legal research | $187.50 |
| 9/6/2008 | 3.00 | legal research | $375.00 |
| 9/24/2008 | 2.00 | legal research | $250.00 |
| 9/26/2008 | 2.00 | legal research | $250.00 |
| 9/29/2008 | 2.00 | legal research | $250.00 |
| | 10.50 | TOTAL | $1,312.50 |

## LEGAL RESEARCH COSTS

| Date | Time | Activity | Cost | |
|------|------|----------|------|---|
| 8/20/2008 | 2.00 | legal research (AK) & print charges | | |
| 9/3/2008 | 0.30 | legal research (GR) & print charges | $ | 165.37 |
| 9/18/2008 | 0.20 | legal research (GR) & print charges | $ | 251.08 |
| 9/23/2008 | 1.10 | legal research (GR) & print charges | $ | 580.56 |
| 10/1/2008 | 2.30 | legal research (AK) & print charges | $ | 933.65 |
| 11/5/2008 | 0.30 | legal research (GR) | $ | 88.12 |
| 11/6/2008 | 0.60 | legal research (AK) | $ | 190.96 |
| 11/13/2008 | 0.60 | legal research (GR) & print charges | $ | 274.57 |
| 11/14/2008 | 0.40 | legal research (GR) & print charges | $ | 157.88 |
| 11/19/2008 | 1.00 | legal research (GR) | $ | 446.46 |
| | | | | |
| | 8.80 | TOTAL | $ | 3,088.65 |

TRANSCRIPTS

| DATE | DESCRIPTION | COST | |
|------|-------------|------|---|
| 8/20/2008 | Expedited partial transcript--Michael Kelly Deposition | $ | 45.84 |
| 8/29/2008 | Expedited full transcript--Michael Kelly Deposition | $ | 554.25 |
| 9/2/2008 | Transcript of 8/27/08 Hearing--Schenkier | $ | 63.05 |
| 10/28/08 | Copy of Transcript of 10/23/08 Hearing --Schenkier | $ | 15.30 |
| | TOTAL | $ | 678.44 |

**FEES FOR COPIES OF PAPERS**

| DATE | DESCRIPTION | # PAGES | COPIES | COST $0.15/PG |
|---|---|---|---|---|
| 8/20/2008 | download, print, & photocopy DE Nos. 73 & 74 | 17 | 3 | $ 7.65 |
| 8/25/2008 | download, print & photocopy DE No. 75 | 7 | 2 | $ 2.10 |
| 8/27/2008 | download, print & photocopy DE No. 77 | 1 | 2 | $ 0.30 |
| 9/10/2008 | download, print & photocopy DE Nos. 82 & 83 | 5 | 2 | $ 1.50 |
| 9/17/2008 | download & print Plaintiff's response to answer re: communications | 8 | 2 | $ 2.40 |
| 10/1/2008 | download, print, & photocopy DE No. 86 | 8 | 3 | $ 3.60 |
| 10/20/2008 | download, print & photocopy DE Nos.92, 93 | 4 | 2 | $ 1.20 |
| 10/23/2008 | download, print & photocopy DE No. 94 | 5 | 2 | $ 1.50 |
| 10/24/2008 | download, print & photocopy DE No. 95 | 1 | 2 | $ 0.30 |
| 10/31/2008 | download, print & photocopy DE No. 99 & 100 | 13 | 2 | $ 3.90 |
| 11/5/2008 | download, print & photocopy DE No. 104 | 1 | 2 | $ 0.30 |
| 2/23/2009 | download, print & photocopy DE Nos. 140 & 141 | 6 | 3 | $ 2.70 |
| 2/24/2009 | download, print & photocopy DE Nos. 144 & 145 | 14 | 3 | $ 6.30 |
| 2/26/2009 | download, print & photocopy DE No. 146 | 1 | 3 | $ 0.45 |
| 3/3/2009 | download, print & photocopy DE No. 148 | 1 | 3 | $ 0.45 |
| | **TOTAL** | | | $ 34.65 |

**TOTAL FEES & COSTS**

| | |
|---|---|
| Ashley Kosztya | $7,005.00 |
| Gail Reich | $12,109.50 |
| Megan McGrath | $56.25 |
| Naomi Avendano | $492.00 |
| Alec McAusland | $615.00 |
| Cherie Getchell | $1,312.50 |
| **TOTAL FEES** | **$21,590.25** |

| COSTS | |
|---|---|
| Transcripts | $678.44 |
| Legal Research | $3,088.65 |
| Copies | $34.65 |
| **TOTAL COSTS** | **$3,801.74** |

**TOTAL FEES & COSTS   $25,391.99**



# UNITED STATES ATTORNEY'S OFFICE
## FOR THE DISTRICT OF COLUMBIA

555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

SEARCH

HOME

U.S. ATTORNEY

ABOUT US

DIVISIONS

COMMUNITY
PROSECUTION

PROGRAMS
FOR YOUTH

VICTIM WITNESS
ASSISTANCE

PARTNERSHIPS

PRESS RELEASES

EMPLOYMENT

ESPAÑOL

CONTACT US

LINKS

SITE MAP

## LAFFEY MATRIX 2003-2010

(2009-10 rates are unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 |
|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 |

Years

### Explanatory Notes

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. See, e.g., 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). See Laffey, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in Laffey were for work done principally in 1981-82. The Matrix begins with those rates. See Laffey, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated Laffey Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. See Covington v. District of Columbia, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995),



cert. denied, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. See, e.g., Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); Jefferson v. Milvets System Technology, Inc., 986 F. Supp. 6, 11 (D.D.C. 1997); Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin., 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); Martini v. Fed. Nat'l Mtg Ass'n, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); Park v. Howard University, 881 F. Supp. 653, 654 (D.D.C. 1995).

**Last Updated on 07/01/2009**

**Department of Justice** | **USAGov** | **USA** | **Privacy Policy** | **PSN** | **PSN Grants** | **www.regulations.gov** | **Legal Policies and Disclaimers** | **DOJ/Kids**

http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html

8/25/2009

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99 C 3696 |
| | ) | |
| CITY OF HARVEY and | ) | |
| OFFICER MANUEL ESCALANTE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This excessive force civil rights case is before the court on the "Second Motion" of plaintiff's counsel for an award under 42 U.S.C § 1988 of attorneys' fees and litigation expenses against the City of Harvey ("Harvey"), the municipal defendant. On October 24, 2004, this court (the case was at that time assigned to Judge Paul Plunkett of this court) awarded fees on the "original motion" in the amount of $507,183 as well as costs and expenses totaling $14,507.00 for a period from the case filing through approximately November 1, 2002. Harvey and the officer defendant, Manuel Escalante, appealed from the judgment for fees as well as a judgment entered July 31, 2002 on a jury verdict awarding $25,000 in compensatory damages against Harvey and Escalante, and $250,000 in punitive damages against Escalante. The appeal from the judgment on the jury verdict was dismissed and the judgment for fees was affirmed. *Robinson* v. *City of Harvey*, 489 F.3d 864 (7th Cir. 2007). The Second Motion represents expenses and attorney time devoted to this case from November, 2002 through March 28, 2008.

Plaintiff's counsel seek $270,309.00 representing 757.65 hours of attorney time ranging from $270 to $395 per hour. In addition they request $4,622 reimbursement for out-of-pocket

litigation expenses. Plaintiff's counsel and Harvey's counsel (Escalante's counsel have not participated in this aspect of the litigation) have filed a joint statement as required by Local Rule 54.3(e) setting out the issues that have prevented their resolution of this matter without court action.

This decision assumes the parties' familiarity with the history of this case including the Seventh Circuit's opinion on the appeal. It applies the same legal standards and method as used by Judge Plunkett in the fee decisions of August 12, 2004 [No. 251] and October 20, 2004 [No. 260], as set out in the court of appeals' opinion, 489 F.3d at 872, and *Hensley* v. *Eckerhart*, 461 U.S. 424 (1983). Only disputed matters are discussed in this opinion, but the court has reviewed all of the materials submitted by the parties in reaching its conclusions.

I.     Calculating the Lodestar

The lodestar is determined by calculating for each moving attorney the number of hours reasonably expended and multiplying that number by a reasonable hourly rate. "An award of the originally calculated lodestar is presumptively reasonable, and it is the City's burden to convince [the court] that a lower rate is *required.*" *Robinson*, 489 F.3d at 872 (emphasis in original, citations omitted). The Second Motion is summarized as follows:

| Lawyer | Hours | Rate | Totals |
|--------|-------|------|--------|
| Jon Loevy | 473.75 | $ 395 | $ 187,131 |
| Russell Barnett | 156.40 | $ 235 | $ 36,754 |
| Arthur Loevy | 36.75 | $ 470 | $ 17,272 |
| Michael Kanovitz | 46.50 | $ 370 | $ 17,205 |
| Russell Ainsworth | 44.25 | $ 270 | $ 11,947 |
| Totals | 713.40 | | $ 270,309 |

### A. Hours Component

Harvey does not object to the amount of time devoted to the tasks itemized in the motion but it does object to fees incurred in several categories. Harvey submits it is responsible for only $69,686.25, representing time spent on the appeal, 204.25 hours at rates from $250 to $365; or, short of that, it objects to all fees related to plaintiff's effort to collect on the punitive damages judgment against Escalante and other categories as set out below.

1.    Fees incurred prior to the judgment on the original motion are recoverable.

This dispute is divided into two periods: (a) fees incurred between November 2002, the end date of fees claimed on the original motion,  and August 14, 2003, the filing date of the original motion, and (b) fees incurred after August 14, 2003 through October 20, 2004, the date of the award on the original motion.  Harvey contends that principles of *res judicata* bar additional fees incurred in the district court for both periods because plaintiff could have filed a motion for those fees during the time the original motion was pending. If not barred, Harvey argues, the claim was waived.

a.    Fees incurred between November 1, 2002 and August 14, 2003 are recoverable.

The original motion covered a period from early 1999 to early November, 2002. Plaintiff's counsel represent that the hours within the Second Motion for the period from November 2002 through August 14, 2003 represent primarily hours spent litigating the fee motion.[1]  Counsel state they did not include the hours in the original motion because (a) there

---

[1]The itemized billing record for principal counsel, Jon Loevy, reflects 65 of a total 152.5 hours during this period devoted to the issue of fees. (These are hours designated A in Harvey's objections as "pre-initial fee petition.") This billing at the requested rate of $395 amounts to approximately $60,000 in fees for Jon Loevy alone.

had not yet been any "meet and confer" for that period; (b) the appeal was pending, so they knew a supplemental motion would be necessary if plaintiff prevailed on the appeal; and (c) they believed that the law did not require it.  Pl.'s Supplemental Petition at 7-8.

In two rulings dated November 8 and 15, 2007 this court ruled with respect to the period from August 15, 2003 to October 20, 2004 that plaintiff's claim was neither barred by *res judicata* nor waived [Nos. 320, 325].  Plaintiff contends that the ruling does not foreclose fees prior to August 13, 2003; rather, the court used that date as the benchmark because Harvey framed the issue as whether *res judicata* barred plaintiff from seeking fees incurred after August 15, 2003.

Contrary to plaintiff's assertion, Harvey's memorandum argued that "any claim for fees that predates the judgment of October 20, 2004, is barred by *res judicata*." [No. 312, p.3].  It is true, however, that the ruling assumes that plaintiff's original motion included fees incurred to the date of filing[2] and analyzes the legal authorities as necessary to decide the question on those facts.  Relying on that assumption, the court ruled that the date of filing was the conclusion of events that were the basis for entry of judgment on the original motion: "[T]he filing of the petition on August 13, 2003 is the date the evidence closed." [No. 320, p.2, first full para.].  Under that assumption the court reasoned based on *Singer Co. v. Skil Corp.*, 803 F.2d 336 (7th Cir. 1986), that *res judicata* would bar only a later claim for fees that pre-dated August 13, 2003.

---

[2]The decision states, "The fees subject to the appeal concerned a petition filed August 15, 2003 for legal services provided to plaintiff's (*sic*) (through a date unspecified in the papers now before the court, but presumably the date of the petition).  Plaintiff now seeks leave to file a petition for fees for services provided after that date." Order of November 8, 2007 [No. 320, p. 1, first para.].  It concludes, "Only claims that could have been brought by August 13 would be barred under the doctrine of claim preclusion." [No. 320, p. 2, first full para.].

[No. 320, p. 2]. Under that reasoning, if one assumes that all Second Motion fees dating pre-August 13, 2003 (or, as Harvey argued, up to pre-October 20, 2004) could have been determined within the original motion, then the decision implies that any such fees would now be barred. On the other hand, if one assumes that these fees could not have been determined in the original motion, then the decision implies that such fees would not be barred.

As each party thinks the court's ruling favors its side of the issue, but they have opposite views of what it means, it is necessary to revisit *Singer*. [3] As relevant here, in *Singer* the patent owner, Skil, in two consolidated cases filed in 1968 and 1974, respectively, sued its licensee, Lucerne, for royalties claimed for a period ending with the third quarter 1977. Skil obtained a judgment for those royalties. *Skil Corp.* v. *Lucerne Prods., Inc.*, 489 F. Supp. 1129 (D. Ohio 1980). In 1982, it filed a second suit for a period beginning with the fourth quarter of 1977 through September, 1982. In the second litigation Lucerne argued that Skil had waived its claims to these royalties, or that *res judicata* barred its claims, because Skil had failed to include those units in its damages computation in the prior litigation. The district court ruled to the contrary: "The doctrine of *res judicata* will not extinguish claims based on activity which takes

---

[3] The law-of-the case doctrine would not apply to bar reconsideration of *Singer*. The Seventh Circuit recently restated the basic law-of-the-case doctrine in *United States* v. *Harris*, 531 F.3d 507, 512-13 (7th Cir. 2008) (citations omitted):

> Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation. However, the doctrine 'authorizes such reconsideration of a previous ruling in the same litigation if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous.' We have reiterated that the law of the case doctrine is a discretionary doctrine that does not limit the district court's power to reopen what already has been decided.

place after the date of events which are the basis for entry of a judgment." *Singer Co.,* 803 F.2d at 342. The Seventh Circuit affirmed, relying on *Lawlor* v. *Nat'l Screen Serv.,* 349 U.S. 322, 328 (1955): "[W]hile 'a judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *Id.*

This court, in framing an analogy to *Singer Co.* treated the date of the original motion as the cutoff date for claims that could have been made. See Order of Nov. 8, 2007, p 2, first full para. ("Singer [Co.] teaches that the closing of the evidence that forms the basis of the judgment draws a line for claim preclusion purposes. . . . In other words, the filing of the petition on August 13, 2003 is the date the evidence closed.") (emphasis added). A better application of *Singer Co.* would have been that claims based on activity after August 13, 2003 (the date of events which were the basis for entry of the October 20, 2004 judgment) were not, *unless those claims existed on August 13, 2003 and could have been sued upon in the previous case.*

Thus, under *Singer Co./Lawlor,* because of Local Rule 54.3(d), which has an elaborate pre-motion process, plaintiff's counsel would have been foreclosed from moving for fees as to which they had not completed this process. *See* Rule 54.3(f) ("Fee Motion. The movant shall attach the joint statement [required in subsection (e)] to the fee motion. Unless otherwise allowed by the court, the motion and any supporting or opposing memoranda shall limit their argument *and supporting evidentiary matter* to disputed issues." (Emphasis added). Certainly, the practicalities of compliance with the local rule necessitate some gap in time between the

6

attorney's labor in the case and the motion.[4]

More fundamentally, *Singer Co./Lawlor* are not even applicable to the situation before this court. Those cases dealt with waiver and *res judicata* in two separate cases or sets of cases. Here, there is only one case. *See Gautreaux* v. *Chicago Hous. Auth.*, 690 F.2d 601, 610 (7th Cir. 1982) (The district judge recognized that the heart of the lawsuit is the remedial stage when he resisted CHA's persistent efforts to "mischaracterize this case as a series of separate matters instead of recognizing it as a continuous litigation."). In *Gautreaux*, the fees at issue were being sought *pendente lite*, not at the conclusion of the litigation, even though the original injunction was entered in 1969, as appeals and enforcement ensued for many years thereafter. The court rejected the argument that plaintiffs were required to move for fees within 10 days of every fee-worthy event, such as entry of the 1969 injunction.

As stated in *Gautreaux*, the district court should take a common sense approach on fee motions. *See id.* at 605 ("Like the district judge, we favor a common sense approach."). Supplemental fee motions are not unusual in civil rights cases; yet the parties have cited no case law addressing whether a § 1988 movant must include all activity to the date of filing of a fee motion on pain of forfeiture, for example as here, after an appeal. Rather, as previously stated in the November 15, 2007 ruling, "Absent a fixed time limitation, the only constraint on when the plaintiffs file for attorneys' fees under Rule 54(d) of the Federal Rules is laches. A laches claim must demonstrate both undue delay and prejudice to the non-delaying party[.]" *Gautreaux*,

---

[4]As decided in the November 8, 2007 ruling, this is also the reason waiver does not apply:
"For similar reasons, there is no basis to impute waiver in this situation. Until the appeal was decided, filing supplemental petitions could readily be viewed as unnecessary work for which compensation could be denied under § 1988. [Citations omitted]." [No. 320, p. 2, penult. para.]

690 F.2d at 612 (internal citation omitted). Plaintiff's reasons for not filing serial motions for fees are reasonable. There is no showing of undue delay or prejudice to Harvey other than the additional liability this conclusion imposes.

For these reasons, the court concludes that neither *res judicata* nor waiver prohibits plaintiff from recovering fees for the period from November 2002 to August 15, 2003.

b. Fees incurred from August 14, 2003 to October 20, 2004 are recoverable.

The conclusion above requires the same result for the period from August 14, 2003 forward. Even if *res judicata* principles were appropriate, they would not foreclose this period of time, as previously concluded in the November ruling.

2. Fees associated with efforts to collect the judgment against Escalante are recoverable as a joint and several liability of both defendants.

Harvey argues that it is not responsible for any fees related to collecting the punitive damages award against Escalante. It relies on *Kentucky* v. *Graham*, 473 U.S. 159 (1985). In *Graham*, the question was whether a governmental entity was liable for fees when a prevailing plaintiff sued governmental employees only in their personal capacities and sued the Commonwealth of Kentucky for fees only in the event plaintiff prevailed against the individual defendants. The Court held that the governmental entity was not liable for fees:

> A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him. Indeed, unless a distinct cause of action is asserted against the entity itself, the entity is not even a party to a personal capacity lawsuit and has no opportunity to present a defense. That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty.

*Id.* at 167-68. Plaintiff does not address *Graham* in his submission but rather relies on *Hensley* v. *Eckerhart*'s instruction that "[w]here a plaintiff has obtained excellent results, his attorney

should recover a fully compensatory fee." 461 U.S. 424, 435 (1983). He also asserts that Harvey paid its lawyers to participate in the post-judgment litigation bearing on Escalante's exposure to punitive damages, that Harvey did not pay the compensatory damages award against Escalante during that period of time, thus, compensatory damages were also at issue in these activities. Finally, plaintiff points out that not all of the activities Harvey designates under this objection were activities related to punitive damages.[5]

Innumerable fee awards have been entered against municipal defendants in this court, but the parties have cited no case addressing the issue Harvey presents. Likely, it is because an award of fees under § 1988 is joint and several against all defendants. Although Escalante is unlikely to be able to pay a fee award, he is liable equally with Harvey.[6]

In general, the Seventh Circuit has taken the view that a prevailing plaintiff is entitled to a fully compensable fee and has given little encouragement to defendants' efforts to pare them back for reasons other than unreasonableness of the time committed and the hourly rate. *E.g.*, *Gautreaux*, 491 F.3d at 661 ("*Hensley* . . . makes clear that while the district court has no authority to order a defendant to pay fees for time spent on matters unrelated to the issues on which plaintiff prevailed, efforts on matters related to the plaintiffs' success are compensable."); *Munson* v. *Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 272 (7th Cir. 1992), quoting *Zabkowicz* v. *West Bend Co.*, 789 F.2d 540, 551 (7th Cir. 1986) ("Where several claims arise out of a common

---

[5]The hours designated C in Harvey's objections are not only related to efforts to collect on the judgment against Escalante but also to activities such as Escalante's motion for a new trial and a settlement conference with the designated magistrate judge.

[6]The October 20, 2004 judgment was not in proper form. It granted the motion for fees but failed to impose it specifically against either defendant. That both parties appealed indicates that each considered the judgment to be against it.

factual core or are based on related legal theories, separating out the legal services rendered with respect to these overlapping claims would be an exercise in futility."). Moreover, the Seventh Circuit read *Graham* narrowly in *Charles* v. *Daley*, 846 F.2d 1057 (7th Cir. 1988). There the court held that private intervening parties who could not have been found liable for violation of the plaintiffs' constitutional rights were nonetheless liable for fees where they had been full participants with the governmental defendants in the litigation (and, "for all practical purposes were their alter ego"). *Id.* at 1064-65. The court distinguished *Graham* principally on the basis that Kentucky was immune from fees as the result of the operation of the Eleventh Amendment and had been dismissed from the law suit on that basis, ruling that *Graham* did not prohibit the judgment against the intervenors. *Id.* at 1066. This court will not read *Graham* more broadly than has our court of appeals so as to exempt a non-immune governmental entity from responsibility for a fully compensable fee.

For all of these reasons, the court concludes that Harvey, as well as Escalante, are liable for a fully compensable award of fees.

3.   <u>Fees for the appeal, including plaintiff's cross appeal are compensable but are disallowed as an unreasonable effort.</u>

Harvey acknowledges liability for fees related to the appeal with the exception of time devoted to plaintiff's cross appeal. Plaintiff contends that not all of these hours were in fact devoted to the cross appeal (according to plaintiff, this amounts to 21 hours), but that aside, plaintiff argues that the hours devoted to the cross appeal (which apparently concerned Judge Plunkett's reduction of the award from the lodestar) "were part of plaintiff's global strategy to

end the case, even if this particular argument did not pan out."[7]

Hours devoted to the cross appeal are related to the litigation of the fee issue. They are not non-compensable on that basis. Nevertheless, the court finds it less than reasonable for plaintiff to cross appeal from the award of $507,183.94 as a deviation from the lodestar of $562,757.75 in light of the district court's wide discretion in determining the fee. For this reason, the court will exclude time devoted to the cross appeal as unreasonable within the meaning of § 1988.

4. <u>Post-appeal fees are recoverable.</u>

Harvey contends that plaintiff's counsel have no right to fees for any time after the appeal was decided because Harvey has agreed to pay the requested amount for the appeal. The objection is directed at plaintiff's post-appeal effort to recover for activity in the district court as far back as November 2002. Because the court has ruled in plaintiff's favor on those issues, plaintiff's counsel's time devoted to advocacy is also compensable.

5. <u>Out of pocket expenses are recoverable.</u>

Harvey objects to expenses associated with post-appeal litigation and to expenses related to taxi and messenger services. Regarding the latter, Harvey cites *Phillips* v. *Bartoo*, 161 F.R.D. 352 (N.D. Ill. 1995), which concerned allowable expenses under the cost-shifting provision of Rule 68. The court held that Rule 68 costs were limited to those allowable under 28 U.S.C. § 1920. A different rule, however, applies to the fee-shifting provision of § 1988:

> Section 1988 . . . seeks to shift the costs of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that cost includes

---

[7]These are designated E on Harvey's objections. To the extent there is a dispute about the total number of hours devoted to the cross appeal, the parties should confer to resolve it.

the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would therefore fall short of its goal if it excluded those expenses.

*Akbar* v. *Fairman*, 788 F.2d 1273, 1279 (7th Cir.1986) (internal citations and quotation marks omitted). *Akbar* teaches that the award of expenses follows the award of fees and denial of expenses follows denial of fees. Payment of transportation expenses is within the realm of reasonable expenses, if plaintiff's counsel can in good faith report that they bill such expenses to paying clients. *Id.* at 354. Under these principles, plaintiff may recover for the claimed expenses, less any associated with the appeal.

**B.    Hourly rate component.**

The table below shows the parties' disagreements in hourly rates for plaintiff's lawyers:

| Lawyer | Harvey's position | Plaintiff's position |
|---|---|---|
| Jon Loevy | $365 | $395 |
| Russell Barnett | $200 | $235 |
| Arthur Loevy | $450 | $470 |
| Michael Kanovitz | $350 | $370 |
| Russell Ainsworth | $320 | $270 |

The differences are not large. The issue, in any event, is whether plaintiff's requested hourly rates are reasonable in the relevant Chicago area market. *See, e.g., Harper* v. *City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("The reasonable hourly rate (or market rate) for lodestar purposes is the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.") (quotations and citations omitted). *Spegon* v. *Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir.1999)

(same). As in *Lopez* v. *City of Chicago*, No. 01 C 1823, 2007 U.S. Dist. LEXIS 85708 (N.D. Ill. Nov. 20, 2007), plaintiff has "submitted his counsel's billing records, affidavits by counsel of record, case law, news periodicals, and the Laffey Matrix in support of the rates set forth in the petition for attorneys' fees. This evidence, in particular the case law, satisfies plaintiff's burden with respect to his attorneys' hourly rates.... Once an attorney provides evidence establishing his market rate, the opposing party has the burden or demonstrating why a lower rate should be awarded." *Id.* at \*21 (quotations and citations omitted).

In *Lopez*, decided November 20, 2007, Jon Loevy's rate was allowed at $365; Arthur Loevy at $450; Michael Kanowitz at $350; Russell Ainsworth at $250. In *Dominguez* v. *Hendley*, No 04 C 2907, plaintiff's counsel attests, the court determined reasonable rates for Jon Loevy at $375; Arthur Loevy, $450, Michael Kanovitz, $345. Plaintiff asks for somewhat higher rates due to increases in prevailing market rates in commercial firms and awards in other cases based on the Laffey Matrix. All of this material supports the reasonableness of the fees requested.

In response, Harvey points out that high billing rates are paid by wealthy commercial clients but not individual litigants of ordinary means, government, or insurance defense. These statements are not documented but empirical studies are available. *E.g.*, John P. Heinz & Edward O. Laumann, CHICAGO LAWYERS: THE SOCIAL STRUCTURE OF THE BAR 335-36 (1982) (describing two separate arenas of lawyers: high status, highly paid lawyers who serve commercial clients and lower status and lower income lawyers who serve more "ordinary" clients). Because the lodestar is to be measured by what paying clients pay for the type of work in question, one point of reference is what commercial law firms bill for litigation lawyers.

There can be no serious argument that the rates requested by the Loevy firm are not reasonable by comparison to them.[8] Another point of reference is the Laffey Matrix used by the United States Attorney's Office for the District of Columbia for guidance for "reasonable" rates in fee-shifting cases. *See Adcock-Ladd* v. *Sec'y of the Treasury*, 227 F.3d 343, 347 n.3 (6th Cir. 2000). Plaintiff has submitted a Laffey Matrix report, which sets an attorney with 11-19 years experience (such as Jon Loevy has) at $360 for the years 2005-2006. Although lawyers undoubtedly work in private firms for less remuneration, Harvey has not demonstrated that its lower rates are based on data derived from a study of such firms or that their work is comparable to that of the Loevy firm.

Moreover, the court is not unmindful of Jon Loevy's success in this case and his now established reputation as a singularly formidable trial lawyer in civil rights cases. The court has no doubt that were he employed by a large commercial firm, Mr. Loevy's billing rate would be more than $395. In addition, Mr. Loevy was more than reasonable in his willingness to reduce his fee in an effort to resolve this case, now in its tenth year on the court's docket. Inasmuch as plaintiff has been put to the task of demonstrating that his hourly rate and time expended are reasonable, the defense has made no showing to the contrary and in fact concedes the reasonableness of rates within $20-$30 of the requested rates, and in light of the success plaintiff's lawyers achieved on his behalf through two trials and an appeal, see *Robinson*,

---

[8] THE NATIONAL LAW JOURNAL on December 10, 2007 published its "sampling of hourly rates charged by law firms that establish billing rates based on associate class." That sampling revealed for Chicago firms that 7th year associates at Vedder, Price, Kaufman & Kammholz were billed at $310; and that 8th year associates at Brinks, Hofer Gilson & Lione were billed at $385; at Jenner & Block, $425; and at Winston & Strawn $435-$510. "Firms Report Their Billing Rates By Associate Class," NLJ. B5, (Col. 1), Dec. 10, 2007.

489 F.3d at 872-73,[9] the court accepts plaintiff's requested hourly rates as reasonable.

## ORDER

Plaintiff's Motion for Supplemental Fees [334] is granted with the exception that plaintiff

is not allowed fees and expenses attributable to the cross appeal. Plaintiff is directed to prepare a

draft judgment order (agreed to in form if possible) consistent with this decision.

Enter: October 7, 2008

_Joan N. Lefkow_
United States District Judge

---

[9]The court of appeals addressed the issue of success in the litigation as follows:

Moreover, we do not agree that the degree of Robinson's success in the litigation
*required* the district court judge to lower the fee award. After the second trial,
judgment was entered in favor of Robinson on both counts against both
defendants, and he was awarded $25,000 in compensatory damages and $250,000
in punitive damages. The City argues that this "minimal" recovery did not
constitute success warranting an award of the full lodestar amount, especially
considering that Robinson asked for more. But $275,000 is hardly "minimal," and
in any event the vindication of Robinson's constitutional rights "cannot be valued
solely in monetary terms." *City of Riverside v. Rivera,* 477 U.S. 561, 574-77, 106
S. Ct. 2686, 91 L. Ed.2d 466 (1986). He effectively persuaded a jury that a
significant number of City of Harvey officials conspired to plant a gun at the
crime scene-a victory that serves the public interest by exposing to light
disturbing police malfeasance and grave municipal institutional failures, and one
that will presumably help to deter future constitutional violations by the City's
officers. These achievements are anything but minimal.