# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JONATHAN HADNOTT, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CITY OF CHICAGO, *et al.*. ) <br> ) <br> Defendants. ) | No. 07 C 6754 <br><br> District Judge Coar <br><br> Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

By an order dated October 23, 2008 (doc. # 95), the Court awarded defendants their reasonable attorneys' fees and costs in connection with defendants' motion to place certain information under seal and for entry of a protective order filed on August 20, 2008 (doc. # 73), an August 27, 2008 court appearance on that motion, a reply memorandum defendants filed in support of the motion on October 1, 2008 (doc. # 86), and a court appearance in connection with the motion on October 23, 2008. Plaintiffs timely objected to that sanctions order on October 31, 2008 (doc. # 99); defendants filed a response to the objection on November 19, 2008 (doc. # 111). In a Memorandum Opinion and Order dated February 24, 2009, the Honorable David H. Coar denied plaintiffs' objections to the October 23, 2008 order, but modified the order to specify that payment of the reasonable attorneys' fees and costs must be paid by plaintiffs' counsel personally, and not by the plaintiffs (doc. # 145: 02/24/09 Mem. Op. and Order at 12).

Now pending before the Court is defendants' motion for judgment on sanctions (doc. # 249), which they filed eleven months after Judge Coar's opinion affirmed the sanctions award. Defendants seek an award of $21,196.09. The requested amount consists of $20,483.25 in fees, based on 80.85

hours of work by three attorneys and a law clerk; $678.44 for obtaining transcripts; and $34.65 for duplication expenses.[1]

In response (doc. # 257), plaintiffs' counsel asks the Court to reconsider and reverse its sanctions order imposing attorneys' fees and costs. Alternatively, plaintiffs' counsel argues that the attorneys' fees and costs request is "outrageously high" (Pls.' Resp. at 11), and asks the Court to limit the amount of costs to $47.64 and to drastically reduce the fee request to only a few hundred dollars.

For the reasons that follow, we grant defendants' fees and costs in the reduced amount of $6,368.84, consisting of $6,210.00 in attorneys' fees and $158.84 in costs.

**I.**

Before addressing the basis for the specific amounts of fees and costs that we award, the Court addresses – and rejects – the threshold argument by plaintiffs' counsel that the Court should reverse its October 23, 2008 decision awarding fees and costs because her conduct was blameless (Pls' Resp. at 9-10). We rejected this argument in October 2008; Judge Coar rejected it in February 2009; and we reject it yet again today. We will not recount the entire history that led to the sanctions award, which Judge Coar's opinion thoroughly describes. However, we briefly summarize the history to explain why this argument by plaintiffs' counsel is as misguided today as it was in October 2008.

---

[1] Defendants originally sought an award of $24,284.74, which included a claim for $3,088.65 in Westlaw charges (Defs.' Mot., Ex. A). In their reply memorandum, defendants concede – as they must – that well settled caselaw establishes that computerized legal research charges are not considered costs (doc. # 258: Defs.' Reply at 6). Thus, defendants have withdrawn their request for payment of Westlaw charges. In addition, defendants do not seek fees for 2.70 hours of time incurred by two supervising attorneys (*id.* at 4 n.1).

A number of disputes arose concerning plaintiffs' attempts to identify certain officers whom they alleged engaged in misconduct at issue in this case. On August 12, 2008, this Court ordered that if plaintiffs wished to attend the deposition of one defendant (Kelly) set for August 21, 2008, they first would have to review a photographic array to ensure that any visual identification they might make of Mr. Kelly was unaffected by seeing him at the deposition. On the day of the deposition, plaintiffs' counsel attempted to have one plaintiff view a photographic array and attend the Kelly deposition, even though the other plaintiffs had not viewed an array. In this Court's absence, the matter was presented to Magistrate Judge Geraldine Soat Brown. Consistent with this Court's intent that the plaintiffs avoid exposure to identifying information about the named defendants until each plaintiff had first viewed a photographic array, Magistrate Judge Brown barred the one plaintiff from attending the deposition if all others had not yet viewed a photographic array. Thus, the Kelly deposition proceeded without any of the plaintiffs in attendance.

During the deposition, however, plaintiffs' counsel refused to assure defense counsel that she would not disclose to her clients the descriptions that were elicited during the deposition of defendants and their vehicle. Immediately after the deposition, defense counsel asked plaintiffs' counsel to participate in a conference call with Magistrate Judge Brown to clarify whether plaintiffs' counsel could share information with her client. Plaintiffs' counsel refused to do so.

The City's August 20, 2008 motion for protective order was occasioned by the refusal of plaintiffs' counsel to provide assurance that she would not disclose to her clients any identifying information about Kelly. At the hearing on August 27, 2008, the Court granted a protective order that barred plaintiffs' counsel from disclosing the descriptions to her client (doc. # 77). At that hearing, the Court also asked plaintiffs' counsel to disclose whether she already had shared that

3

information with any of her clients; plaintiff's counsel refused to do so. As a result, the Court allowed plaintiffs' counsel to brief the issue of whether "she may assert attorney client privilege as a basis for refusing to disclose to the Court whether she has already given the foregoing information to any of the plaintiffs" (*Id.*). Plaintiffs' counsel filed a memorandum in support of her refusal (doc. # 85), which led to defendants filing a reply memorandum on October 1, 2008 (doc. # 86).

At the October 23, 2008 hearing, the Court rejected the privilege assertion of plaintiffs' counsel, and ordered her to disclose whether she relayed to any of her clients identifying information she had obtained during the Kelly deposition (doc. # 95). At that time, the Court also awarded defendants' their reasonable attorneys' fees and costs.

In her objection to the October 23, 2008 sanctions order, plaintiffs' counsel argued that the Court's orders did not literally bar her from sharing with her clients identifying information she obtained during the Kelly deposition, and that the attorney-client privilege protected her from having to disclose whether she provided any of that information to her clients. Judge Coar categorically rejected those arguments. With respect to the scope of the Court's earlier orders, Judge Coar stated that "the spirit and intent of the orders was clearly communicated: the Court did not want any of the plaintiffs to be exposed to identifying information about the named defendants before each of them had viewed a photographic array. It should have been obvious to [plaintiffs' counsel], then, that providing such information to her clients would contravene the Court's intent" (02/24/09 Mem. Op. and Order at 10).[2]

---

[2] Indeed, in this Court's judgment, Magistrate Judge Brown's pre-deposition ruling made that point all the more obvious: she pointed out that allowing one plaintiff to view a photographic array and attend the deposition even though the other plaintiffs had not viewed the array would subvert the intent of this Court's August 12 order, "because nothing would prevent the plaintiff from relaying a physical description of Kelly to the other plaintiffs" (doc. # 145: Mem. Op. and Order at 3). It should have been clear to plaintiffs' counsel that it likewise would subvert the intent of this Court's order if she were to disclose identifying information she obtained during the Kelly deposition before her clients viewed

4

With respect to the attorney-client privilege issue, Judge Coar stated that while he did not believe plaintiffs' counsel raised the issue in bad faith (doc. # 145: Mem. Op. and Order at 12), the questions that this Court required plaintiffs' counsel to answer concerning disclosures she may have made to her clients "are not protected by the attorney-client privilege" (*Id.* at 8). Judge Coar went further, and stated that the entire attorney-client issue "only arose because of [plaintiffs' counsel] unreasonable and vexatious conduct during and at the conclusion of Kelly's deposition" (*Id.* at 12).

In her response, plaintiffs' counsel again offers a defense for her actions (Pls.' Resp. at 9-10), and attempts to blame others for the situation in which she now finds herself. We regret that we must say that if plaintiffs' counsel is a victim, she is a victim of her own actions. Plaintiffs' counsel could have avoided any motion for protective order in the first instance by agreeing to participate in a telephone conference with defense counsel and Magistrate Judge Brown immediately after the Kelly deposition, in the event that she was unclear about whether she could discuss with her clients Mr. Kelly's physical description; or, she could have agreed not to disclose that information until the parties next appeared before this Court. Then, when the Court asked plaintiffs' counsel whether she had disclosed the prohibited information to any of her clients, plaintiffs' counsel could have simply answered the question – an answer which, as plaintiffs' counsel emphasizes in her response, would have shown that she had done "nothing to taint the identification of defendants by plaintiffs" (Pls.' Resp. at 10).

---

a photographic array. It is difficult to avoid the conclusion that this is precisely why plaintiffs' counsel refused to participate in a telephone conference with Magistrate Judge Brown after the deposition to get a ruling on the point. Plaintiffs' suggestion that she did not want to participate in the call because "Judge Brown seemed to be displeased" to have received a call on the matter prior to the Kelly deposition (Pls.' Resp. at 10) is simply not credible.

We conclude that this is a case where the advocacy zeal of plaintiffs' counsel interfered with her professional judgment. As Judge Coar commented, "[t]he expenses covered by Judge Schenkier's order all could have been avoided had [plaintiffs' counsel] simply agreed to a telephonic conference with duty Magistrate Judge Brown to clarify her obligations under the Court's rulings" (doc. # 145: 02/24/09 Mem. Op. and Order at 12).

In sum, all issues concerning the propriety of sanctions for the conduct of plaintiffs' counsel have been fully litigated. We decline to revisit or reverse our ruling.[3]

## II.

We now turn to the request for attorneys' fees. Plaintiffs' counsel challenges the amount of time for which compensation is sought as well as the rates being claimed by each of the defense attorneys. We address each of those issues in turn.

### A.

Defendants claim 80.85 hours for work done by three attorneys and one law clerk in connection with: the filing of the motion for protective order on August 20, 2008; a court appearance on that motion on August 27, 2008; a review of pleadings filed by plaintiffs in connection with the attorney-client issue raised by plaintiffs' counsel and the preparation of the reply that they filed on October 1, 2008; a court appearance on October 23, 2008; and work in (successfully) opposing plaintiffs' counsel's objections to the Court's October 23, 2008 sanctions order.

---

[3] Plaintiffs' counsel also argues that none of this would have happened if the defendants had not improperly denied that they had any contact with plaintiffs (Pls.' Resp. at 3-4). We express no view concerning plaintiffs' charges of misconduct by defendants. We point out only that any purported misconduct by the defendants does not justify the conduct of plaintiffs' counsel, or insulate her from sanctions for her own conduct.

Plaintiffs' counsel argues that defendants should not be compensated for the time that they spent in opposing plaintiffs' objection to the sanctions order (Pls.' Resp. at 7). We disagree. Plaintiffs' counsel argues that the objection did not address the defendants' motion for protective order, but the subsequent issue concerning attorney-client privilege (*Id.*). However, the October 23, 2008 order awarded fees and costs not only for the August 20 motion for a protective order and the August 27 hearing on the motion, but also in connection with the subsequent briefing and court appearance that were the result of the misplaced assertion of attorney-client privilege by plaintiffs' counsel. Of course, plaintiffs' counsel had the right to object to the Court's sanctions order. But she cannot reasonably expect that defendants would stand mute in the face of the objection, or would not seek compensation for their efforts in successfully defending the sanctions award they obtained. Just as a successful plaintiff in a fee-shifting case is entitled to be paid for reasonable time expended in preparing attorneys' fees motions, so too are defendants here entitled to recover reasonable fees and costs incurred in defending the sanctions order. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-54 (7th Cir. 1999) (holding that hours "reasonably expended" may be recovered in connection with the preparation of a fee request).

Plaintiffs' counsel also questions the accuracy of defendants' time records, given the statement on the record by defense counsel that attorneys employed by the Law Department of the City of Chicago do "not really" keep contemporaneous time records (Pls.' Resp. at 4-5). In response, defendants state that they have spent a great deal of time reviewing "internal records ... to produce a billing record that accurately represented the amount of work" that they performed (Defs.' Reply at 3). In addition, the legal personnel for whose time defendants seek compensation all have submitted declarations attesting to the accuracy of the billing records (Defs.' Mot., Ex. E).

Plaintiffs' counsel offers no authority for the proposition that an attorney who does not regularly keep contemporaneous time records is forbidden to offer "reconstructed" time records. We therefore accept that the time records offered by defendants reflect the amount of time that each of the attorneys in question spent on the matters relating to the motion for protective order and the defense of the sanctions order.

However, our sanctions order awards only those attorneys' fees and costs that are *reasonable* (doc. # 95), and the mere fact that an attorney spent a certain amount of time on a matter does not, *a fortiori*, make that expenditure of time reasonable. We have reviewed the amount of time defendants spent on various activities, and we have assessed it in light of the activity that was performed and the experience level of the attorneys performing it. That review leads us to significantly reduce the number of hours claimed by the defense attorneys.

The lion's share of the work for which defendants seek compensation was performed by Ashley C. Kosztya and Gail L. Reich. Ms. Kosztya graduated from law school in June 2001. After graduation, she worked for five years as an Assistant State's Attorney in Cook County in both the criminal and civil divisions; worked in private practice for two years concentrating on insurance defense; and since May 2007 has been employed in the City of Chicago's department of law. Through that work, Ms. Kosztya has obtained significant trial experience. Ms. Reich graduated from law school in June 2002, and since that time has been employed as a lawyer for the City of Chicago. In August 2006, she prosecuted cases for the building and land use litigation division, and since August 2006 has focused exclusively on the defense of City of Chicago police officers in Section 1983 cases. Thus, during the period in question here (August 2008 through November 2008), Ms. Kosztya and Ms. Reich had significant experience generally as lawyers and in particular with respect

8

to Section 1983 litigation concerning the City. With that in mind, the Court now examines the amount of time that these attorneys spent on various matters.

We begin with the motion for protective order filed on August 20, 2008. Defendants' records show that Ms. Kosztya spent 4.9 hours and Ms. Reich 3.4 hours in preparing the motion. That was an excessive amount of time to spend on drafting a four-page pleading (without attachments) which cited no legal authority. Counsel with the experience of Ms. Kosztya and Ms. Reich should have been able to prepare that motion in far less time. We will award 2.0 hours of time for Ms. Kosztya's preparation of that motion.

Both Ms. Kosztya and Ms. Reich attended the August 27, 2008 hearing, and defendants' records show 1.25 hours for each attorney. Ms. Dymkar criticizes that amount of time as excessive, and indicates that she spent only .8 hours in connection with that hearing (Pls.' Resp. at 6). We do not find this difference significant; nor do we find that it was improper for defendants to send both attorneys to the court hearing. Accordingly, we will award 1.25 hours of time each for Ms. Kosztya and Ms. Reich for the August 27 court appearance.

On October 1, 2008, defendants filed a reply memorandum responding to Ms. Dymkar's brief in connection with the attorney-client issue. For that activity, defendants claim 34.9 hours: 15.3 hours by Ms. Reich, 9.1 hours by Ms. Kosztya, and 10.5 hours by a law clerk (who was in law school at the time). The memorandum in question was only eight pages long (again, without attachments). The memorandum did not address any novel or complex legal or factual issues. And, while this memorandum did cite legal authority, that authority involved well-established rules concerning the attorney-client privilege that should take experienced attorneys little time to locate. We see no reason that it should have taken Ms. Reich (who spent the most time on this task) more than 6.0

hours to review the brief of plaintiffs' counsel and to prepare the reply memorandum. Accordingly, we will award 6.0 hours of time for Ms. Reich's work on the pleading. We will award another 2.0 hours of time for Ms. Kosztya, which we find would be reasonable for her to review the brief filed by plaintiffs' counsel, to consult with Ms. Reich about the reply memorandum, and to make comments on a draft of the reply memorandum.[4]

The Court conducted a hearing on October 23, 2008, which Ms. Kosztya (but not Ms. Reich) attended. Ms. Kosztya has recorded 1.5 hours for attending that hearing, and another .5 hours for reading a surreply filed by plaintiffs' counsel shortly prior to the hearing. Plaintiffs' counsel said she only spent .6 hours in connection with attendance at the hearing. We find it reasonable for Ms. Kosztya to have reviewed the surreply so that she could be prepared to address it at the hearing. However, we find the 1.5 hours spent on the court appearance to be excessive, and we will reduce that amount to 1.0 hour. We thus award defendants a total of 1.5 hours of Ms. Kosztya's time in connection with the October 23 hearing. Ms. Reich separately billed .6 hours for reviewing plaintiffs' surreply. However, the defendants' records do not indicate that Ms. Reich either attended the court proceeding or consulted with Ms. Kosztya about the surreply in advance of the court proceeding. For those reasons, we will not award Ms. Reich time for reviewing the surreply.

On November 19, 2008, defendants filed their response to plaintiffs' counsel's objections to the sanctions order. Defendants claim 28.7 hours for that activity: 21.7 by Ms. Reich and 7.0 by Ms. Kosztya. This expenditure of time includes review of plaintiffs' counsel's objections, research,

---

[4] We will not award any additional time for research done by the law clerk. Given the straightforward legal principles involved, we find that additional research (particularly in the amount of 10.5 hours) was not reasonably necessary. As a result, we need not resolve today the argument by plaintiffs' counsel (Pls.' Resp. at 5) that no compensation should be provided for a law clerk who was still in law school and was not paid by the City. Defendants did not respond to the point. That said, we express our skepticism about the propriety of seeking compensation for time spent by an individual to whom the City pays no compensation.

10

and preparation of a fifteen-page response. However, much of the fifteen-page response is derivative of the defendants' October 1, 2008 reply memorandum: the same procedural background is discussed, and most of the same cases are discussed. Experienced counsel such as Ms. Reich and Ms. Kosztya should have been able to prepare a response in far less time. The Court concludes that it is appropriate to award 8.0 hours of time to Ms. Reich and 1.0 hour of time to Ms. Kosztya for preparation of the response.

Accordingly, we award defendants 23.00 hours of time: 15.25 hours of time for Ms. Reich and 7.75 hours of time for Ms. Kosztya.[5]

**B.**

We now turn to the hourly rate at which this time is to be compensated. Because defense counsel are employed by the City, they do not have a true billing rate. "If the Court is unable to determine the attorney's true billing rate, however, (because he maintains a contingent fee or public interest practice, for example), then the Court should look to the next best evidence – the rate charged by lawyers in the community of 'reasonably comparable skill, experience and reputation.'" *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 892, 895 n.11) 1984). While *People Who Care* arose in a fee-shifting case pursuant to 42 U.S.C. § 1988, the same approach is applicable to determining fees to be awarded in a sanctions case where the attorney receiving the fee award does not have a true billing rate. *See Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007).

---

[5] Ms. Kosztya and Ms. Reich spent small additional amounts of time (.10 and 2.6 hours respectively) on matters that the Court concludes are not sufficiently related to the issues involved in the motion for protective order to be compensable. Likewise, defendants seek compensation for .25 hours of time for another attorney, Megan McGrath, for work performed well after the response to the objections was filed. That work is not compensable here.

A party who seeks attorneys' fees cannot rely merely on his or her own "self-serving affidavit . . . [to] satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon*, 175 F.3d at 556; *Thomas v. Sheahan*, 556 F. Supp. 2d 861, 898 (N.D. Ill. 2008). Rather, the movant must produce "satisfactory evidence – in addition to the attorneys' own affidavits – that the requested rates are in line with those prevailing in the community." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 596 (7th Cir. 1999). Once the movant has done so, "the burden shifts to the defendant to present evidence establishing a good reason why a lower rate is essential." *Id.* (quotations omitted).

In this case, defendants have offered their own declarations attesting to the reasonableness of the rates they seek (Defs.' Mot., Ex. E). It is customary for a lawyer seeking to establish the reasonableness of the rate sought to offer other fee awards setting an hourly rate for the lawyer, or affidavits or declarations of other experienced attorneys in the community attesting that the rate sought is a reasonable one in the market. Defendants have not done so here. The only evidence they offer in addition to their own declarations is the "Laffey Matrix" (*Id.*, Ex. B). The Laffey Matrix is a table of hourly rates for attorneys and paralegals in the Washington, D.C. area prepared by the Civil Division of the United States Attorney's Office for the District of Columbia.

Based on the Laffey Matrix, Ms. Kosztya seeks an hourly rate of $300.00 and Ms. Reich an hourly rate of $270.00. During the period from August through November 2008, when the work in question was performed, Ms. Kosztya had seven years of experience and Ms. Reich had six years of experience. According to the Laffey Matrix, during that time period, attorneys with four to seven years of experience would have an hourly rate of $270.00. Thus the Laffey Matrix supports the $270.00 hourly rate sought by Ms. Reich, but not the higher rate sought by Ms. Kosztya. Defendants

have offered no other evidence to support the higher rate sought for Ms. Kosztya. Accordingly, we will reduce Ms. Kosztya's rate to $270.00 an hour in conformance with the Laffey Matrix.[6]

Although the Seventh Circuit has not addressed the utility of the Laffey Matrix, numerous judges in this district have considered the Laffey Matrix as at least one factor in determining the reasonableness of hourly rates sought. *See, e.g., In re Trans Union Corp. Privacy Litig.*, No. MDL 1350, 00 C 4729, 2009 WL 4799954, at *19 (N.D. Ill. Dec. 9, 2009); *Catalan v. RBC Mortgage Co.*, 05 C 6920, 2009 WL 2986122, at *6 (N.D. Ill. Sept. 16, 2009); *Decker v. Transworld Sys., Inc.*, 09 C 50073, 2009 WL 2916819, at *5 (N.D. Ill. Sept. 1, 2009); *Robinson v. City of Harvey*, 99 C 3696, 2008 WL 4534158, at *7 (N.D. Ill. Oct. 7, 2008); *Lopez v. City of Chicago*, 01 C 1823, 2007 WL4162805, at *8 (N.D. Ill. Nov. 20, 2007); *Delgado v. Vill. of Rosemont*, 03 C 7050, 2006 WL 3147695, at *5 (N.D. Ill. Oct 31, 2006); *Sadler v. Barnhart*, 02 C 6891, 2004 WL 419908, at *2-3 (N.D. Ill. Feb. 25, 2004); *cf. Thomas ex rel. Smith v. Sheahan*, 556 F.Supp. 2d 861, 898-99 (N.D. Ill. 2008) (declining to rely on Laffey Matrix in determining fees); *Schultz v. City of Burbank*, 06 C 5646, 2008 WL 1099479, at *1 (N.D. Ill. Apr. 10, 2007) (same); *Hollard v. Barnhart*, 02 C 8398, 2004 WL 419871, at *2 (N.D. Ill. Feb. 3, 2004) (same). We conclude that the Laffey Matrix is "satisfactory evidence" of the prevailing rate, so that the burden shifts to opposing counsel to show why a "lower rate is essential." *Connolly*, 177 F.3d at 596.

Plaintiffs' counsel has failed to carry that burden. She has not attacked the validity of the Laffey Matrix as a means of determining a reasonable hourly rate. Nor has she offered other

---

[6]To the extent that defendants may argue that they are entitled to a higher hourly rate because the fee request is being made in 2010, we disagree. Judge Coar affirmed the sanctions order on February 24, 2009. Defendants' decision to wait eleven months to file their motion for the fee award provides no basis for them to receive a higher hourly rate than would have applied had they filed their motion more promptly.

13

evidence that a different rate should apply. Rather, plaintiffs' counsel conclusorily asserts that a lower hourly rate (which she suggests is $80.00) should apply to government attorneys (Pls.' Resp. at 10). Apart from the fact that plaintiffs' counsel offers no rationale for the proposed $80.00 hourly rate, we see no reason that an attorney working for the government who has been awarded fees may not receive an hourly rate that reflects the private market for attorneys of like skill and experience. Plaintiffs' counsel has certainly offered no authority to support her argument. We therefore will award fees to both Ms. Reich and Ms. Kosztya at the rate of $270.00 per hour. Based on the total number of hours that we have awarded for those two attorneys – 23.00 hours – application of that rate results in a fee award of $6,210.00.

## III.

We now turn to defendants' request for costs. Defendants seek $678.44 in costs for various transcripts. That includes $45.84 for an expedited transcript of excerpts from Mr. Kelly's deposition; $63.05 for expedited delivery of a transcript of the hearing of August 27, 2008; and $15.30 for expedited delivery of the transcript of the October 23, 2008 proceedings. Those transcripts all were reasonably necessary for the various proceedings at issue, and we will award the costs for those transcripts of $124.19.

Defendants also seek payment of $554.25 for the full transcript of the Kelly deposition. We have little doubt that defendants would reasonably would want to have a transcript of the deposition of one of the named defendants; however, we are not persuaded that the sole reason they obtained the entire transcript was related to the proceedings attendant to the motion for protective order. Therefore, we will not award costs of $554.25 for the full Kelly transcript as a sanction. That ruling, of course, is without prejudice to defendants seeking payment for the transcript of the Kelly

deposition as part of a bill of costs under Federal Rule of Civil Procedure 54(b) in the event that defendants prevail in this lawsuit.

Finally, defendants seek payment of $34.65 for duplicating costs. We are persuaded that those costs were reasonable and necessary in connection with the proceedings involving the motion for protective order, and we therefore will grant that element of cost. As a result, we award defendants $158.84 in costs as part of the sanction award.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on sanctions (doc. # 249) is granted, but in the reduced amount of $6,368.84, consisting of $6,210.00 in attorneys' fees and $158.84 in costs. This award shall be paid by plaintiffs' counsel to defendants by May 10, 2010. We hope and expect that the parties will now put this unnecessary and unfortunate episode behind them and focus their energies on addressing the merits of the claims plaintiffs have made.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: April 12, 2010**